UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-61903-CV-MARTINEZ
MAGISTRATE JUDGE REID

WILLIAM NEWKIRK,

      Petitioner,

v.

MARK S. INCH,[1]

      Respondent.

_____/

## SUPPLEMENTAL REPORT OF MAGISTRATE JUDGE
## RE FEDERAL HABEAS CORPUS PETITION - 28 U.S.C. § 2254

### I. Introduction

Petitioner, **William Newkirk,** a state convicted felon, currently confined at Avon Park Correctional Institution, filed this *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. [ECF 1]. He attacks the constitutionality of his 1981 conviction for robbery with a firearm, entered following a jury verdict in Broward County Circuit Court, **Case No. 81-634-CF10B.** Because he also challenged his prior conviction, entered in Broward County Circuit Court, **Case No. 80-9947-**

_____

[1]Pursuant to Fed. R. Civ. P. 25(d), since Mark S. Inch has replaced Julie Jones as the Secretary of the Florida Department of Corrections, he is substituted as the proper respondent in this case.

1

**CF10B,** it was opened as a separate federal habeas corpus petition, assigned **Case No. 17-61850-CV-Williams,** and then dismissed, as an unauthorized successive petition. *See Newkirk v. Bondi,* S. D. Fla., Case No. 17-61850-CV-Williams.[2] [17CV61850 ECF 3; 8]. For the reasons discussed below, although this petition, solely attacking **Case No. 81-634CF10B** is not an unauthorized successive petition, and is not time-barred, it should be DENIED because Petitioner is not entitled to relief on the merits.

This case has been re-referred to the undersigned for consideration and report, pursuant to 28 U.S.C. § 636(b)(1)(B), (C); S.D. Fla. Local Rule 1(e) governing Magistrate Judges; S.D. Fla. Admin. Order 2019-02; and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Court.

The court has reviewed the instant federal habeas petition [ECF 1], together with Petitioner's prior habeas petitions filed with this court, assigned **Case No. 90-02921-CV- Nesbitt, Case No. 96-06802-CV-Nesbitt**, and, **Case No. 17-61850-CV-Williams,** and takes judicial notice of those court records and filings. *See* Fed. R.

---

[2]Petitioner previously attacked the constitutionality of his convictions for the homicide of Urso and strong armed robbery of Urso, entered in Miami-Dade County Circuit Court, Case No. F80-9947, in a first habeas petition filed with this court. *See Newkirk v. Butterworth,* S. D. Fla., Case No. 90-2921-CV-Nesbitt. The petition was denied on the merits [90CV2921 ECF 19; 23], and Petitioner's certificate of appealability subsequently denied by the appellate court [*Id.,* ECF 28]. There does not appear to have been a new judgment entered as to the Miami-Dade court convictions in Case No. F80-9947. As a result, when the court ordered that the attack on that conviction be opened as a separate habeas petition, it was properly dismissed as an unauthorized successive petition.

Evid. 201; *see also* [ECF 18]. The court has also reviewed the state's responses [ECF 7; 11], to this court's order to show cause, together with Petitioner's replies [ECF 10; 12].

## II. Claims

Construed liberally, as afforded *pro se* litigants, Petitioner raises the following four grounds for relief:[3]

1.   Petitioner's attorney was ineffective for failing to challenge the court's lack of jurisdiction over the Information charging him with armed robbery with a firearm in Case No. 81-634CF10B. [ECF 1, p. 4].

2.   Petitioner's attorney was ineffective for misadvising him to reject the state's plea offer based on a "promise" that Petitioner would prevail at trial. [ECF 1, p. 6].

3.   Petitioner's attorney was ineffective for failing to argue and preserve for appellate review a claim that the jury's general verdict was unlawful. [ECF 1, pp. 7-8].

4.   Petitioner's attorney was ineffective for moving to consolidate the robbery offense charged in **Case No. 81-634** with the murder and armed robbery offenses charged in **Case No. 80-9947.** [ECF 1, p. 9].

---

[3]This Report focuses only on the claims as they relate the Miami-Dade County Circuit Court, Case No. 81-634CF10B. To the extent the claims relate to the 80-9945 conviction, they are not addressed here as they were the subject of a separate habeas petition filed with this court.

3

### III. Procedural Background

After consolidating the charges for first degree murder and armed robbery with a deadly weapon in **Case No. 80-9947CFB,** with the charge for armed robbery with a deadly weapon in **Case No. 81-634,** Petitioner proceeded to trial where he was found guilty. *See Newkirk v. Singletary,* U.S. Dist. Ct., S. Dist. of Fla., Case No. 90-02921-CV-Nesibbt; [90CV02921 ECF 12, pp. 168, 182]. Specifically, as will be summarized in detail below, the jury found Petitioner and his codefendant, Roland Sprint ("Sprint"), murdered a 17-year old boy in the process of stealing his car, and then used the stolen vehicle in an armed robbery of a convenience store.

In the conviction under attack here, Miami-Dade County Circuit Court, Case No. 81-634, on April 2, 1981, Petitioner was adjudicated guilty and sentenced to life imprisonment, with a three-year minimum mandatory. [ECF 7-1, Ex. 1, p. 6]. In 1982, his conviction and sentence were *per curiam* affirmed by the Fourth District Court of Appeals in a decision without written opinion. *See Newkirk v. State,* 417 So. 2d 354 (Fla. 4th DCA 1982); [*Id.,* Ex. 2, p. 8]. According to Respondent, it no longer has a copy of the trial transcripts or proceedings on direct appeal because they are only kept for 25 years. [ECF 11, p. 2]. Petitioner was convicted more than 36 years ago. This court, however, has been able to obtain copies of those records from the court's record center, including the relevant trial transcripts filed by Respondent

4

in Petitioner's first habeas corpus petition filed with this court in Case No. 90-2921-CV-Nesbitt. This court takes judicial notice of these records, which have now been scanned and are now viewable on CM/ECF, the court's electronic docket.

The record reveals that, between 1984 and 1993, Petitioner filed several motions for post-conviction relief in the state court, and a first federal habeas corpus petition, pursuant to 28 U.S.C. § 2254, in this court, assigned **Case No. 90-02921-CV-Nesbitt,** attacking his convictions entered in Broward County, Circuit Court, **Case Nos. 80-9947-CF10B** and **81-634-CF10B**. *See William J. Newkirk v. Richard L. Dugger, Sec'y Dep't of Corr.*, S. Dist. of Fla., Case No. 90-02921-CV-Nesbitt [90CV02921 ECF 1]. After the 1990 federal habeas petition was denied on the merits, the Eleventh Circuit denied Petitioner's request for a certificate of probable cause. [90CV2921 ECF 23; 28].

Undeterred, Petitioner continued filing post-conviction collateral attacks in the state forum. [17CV61903 ECF 7-1, Ex. 3]. In 1996, Petitioner returned to this court, filing a second federal habeas corpus petition, pursuant to 28 U.S.C. § 2254, assigned **Case No. 96-6802-CV-Nesbitt,** once again challenging the constitutionality of his state court convictions, entered in Broward County Circuit Court, **Case Nos. 80-9947-CF10B** and **81-634-CF10B**. [96CV6802 ECF 1]. The

petition was dismissed as an unauthorized successive petition pursuant to 28 U.S.C. § 2244(b)(3). [*Id.*, ECF 27]. Petitioner did not appeal the dismissal.

In February 2017, Petitioner continued his post-conviction attacks, filing a motion to correct illegal sentence, pursuant to Fla. R. Crim. P. 3.800(a), challenging as unlawful the three-year minimum mandatory term of imprisonment imposed in **Case No. 81-634**. [*Id.,* Ex. 4]. The state agreed the three-year minimum mandatory was unlawful, but argued, in relevant part, that its imposition was harmless and required only the striking of the three-year minimum mandatory provision because Petitioner had already served that portion of his sentence. [*Id.,* Ex. 5, p. 26]. On March 10, 2017, the trial court entered an order granting Petitioner's Rule 3.800 motion, finding that Petitioner had not been in actual possession of the firearm. [17CV61903, ECF 18, p. 2]. The court further found "all other aspects of Defendant's sentence are legal and are not to be disturbed by this ruling." [*Id.*].

On **September 18, 2017,** Petitioner filed this third federal habeas corpus petition. [*Id.,* ECF 1, p. 12]. While this federal habeas petition was pending, on December 18, 2017, Petitioner sent a letter to the state trial court requesting the court to notify the Tallahassee Sentencing Specialist that the three-year minimum mandatory sentence in Case No. 81-634 had been removed in March 2017. [*Id.,* ECF 20-3]. In response, on December 21, 2017, the state court submitted a Court

6

Verification Form to the Department of Corrections, confirming that an Order granting Petitioner's Rule 3.800 motion had been entered. [*Id.,* ECF 18, p. 1]. On that same date, a two-page Circuit Court Disposition Order was entered, "*nunc pro tunc*" to 1981, deleting the three-year minimum mandatory term of imprisonment. [ECF 20-2, pp. 1-2]. Also, on that date, **a new sentencing document** was entered *nunc pro tunc* to April 2, 1981, once again re-imposing a term of life imprisonment as to the armed robbery conviction but correcting the sentence to reflect the removal of the three-year minimum mandatory term of imprisonment. [ECF 20-1, pp. 1-3] (emphasis added).

## IV. Unauthorized Successive Petition

Respondent first argues that this court lacks jurisdiction over this third federal habeas corpus petition because it is an unauthorized successive petition. [ECF 7, p. 7; 11, p. 11-12].

Relying upon *Insignares v. Sec'y, Fla. Dep't of Corr.,* 775 F.3d 1273 (11th Cir. 2014), Petitioner argues that his habeas petition is not successive because the March 2017 state court order removing the three-year minimum mandatory term of imprisonment created a new judgment. [ECF 1, p. 11]. The new judgment was entered on December 21, 2017, a copy of which is being made part of this record by separate court order.

## A. Applicable Law

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *See Wilcox v. Fla. Dep't of Corr.,* 158 F.3d 1209, 1210 (11th Cir. 1998)(*per curiam*). The AEDPA generally bars second or successive federal habeas petition. *See Patterson v. Sec'y, Fla. Dep't of Corr.,* 849 F.3d 1321, 1324-25 (11th Cir. 2017)(*en banc*)(citing 28 U.S.C. § 2244(b)). The term "second or successive" is not "self-defining" and does not necessarily refer to all habeas petitions filed second or successively in time. *See Stewart v. United States,* 466 F.3d 856, 859 (11th Cir. 2011). "Whether a petition is second or successive depends on 'the judgment challenged.'" *Patterson v. Sec'y, Fla. Dep't of Corr.,* 849 F.3d at 1325 (quoting *Insignares v. Sec'y, Fla. Dep't of Corr.,* 755 F.3d 1273, 1278 (11th Cir. 2014)).

For purposes of 28 U.S.C. § 2244, the relevant judgment is "the judgment authorizing the prisoner's confinement." *Patterson*, 849 F.3d at 1325 (quoting *Magwood v. Patterson,* 561 U.S. 320, 332 (2010)). "To be entitled to another round of federal habeas corpus review, the prisoner must have obtained 'a new judgment intervening between [his] two habeas petitions.'" *Wells v. Sec'y, Dep't of Corr.,* 769 F. App'x 885, 887 (11th Cir. 2019) (quoting *Magwood*, 561 U.S. at 339)). "[T]he judgment to which AEDPA refers is the underlying conviction and most recent sentence that authorizes petitioner's current detention." *See Ferreira v. Sec'y, Dep't*

*of Corr.,* 494 F.3d 1286, 1292 (11th Cir. 2007). Consequently, where a petitioner seeks to challenge a different judgment than was challenged in prior § 2254 petitions, and that new judgment authorizes the petitioner's confinement, the petition will not be deemed second or successive, regardless of whether its claims challenge the sentence or the underlying conviction. *Magwood v. Patterson,* 561 U.S. at 323-24, 332; *Insignares v. Sec'y, Fla. Dep't of Corr.,* 755 F.3d at 1281.

"[N]ot all changes to a sentence create a new judgement . . ." *See Patterson*, 849 F.3d at 1326 (citing *United States v. Portillo,* 363 F.3d 1161 (11th Cir. 2004)). A subsequent order that alters a sentence constitutes a new judgment only if it authorizes or changes petitioner's confinement because state courts often make "[m]any ameliorative changes in sentences. . . as a matter of course, such as the removal of a fine or a restitution obligation," and, if each time this was done, it resulted in a new "judgment" for purposes of federal habeas corpus review it would conflict with the "central purpose" of AEDPA "to ensure greater finality of state and federal judgments in criminal cases." *See Patterson*, 849 F.3d at 1326-27 (11th Cir. 2017) (quoting *Gonzalez v. Sec'y for Dep't of Corr.,* 366 F.3d 1253, 1269 (11th Cir. 2004) (*en banc*)). In *Insignares v. Sec'y, Fla. Dep't of Corr.,* the Eleventh Circuit agreed with the defendant's argument that, "although he filed a 2007 federal petition, the reduction of his mandatory-minimum sentence in 2009 resulted in a new

judgment," so that the 2011 federal habeas petition was his first challenge to that new judgment and not a successive petition. *Insignares v. Sec'y, Fla. Dep't of Corr.,* 755 F.3d at 1278-79. The Eleventh Circuit made clear that "there is only one judgment, and it is comprised of both the sentence and the conviction." *Id.* at 1281.

## B. Analysis

To determine whether the March 2017 order granting Petitioner's Rule 3.800 motion and the subsequent entry of a new sentence in December 2017 removing the three-year minimum mandatory term of imprisonment constitutes a new judgment authorizing Petitioner's current confinement, this court looks to relevant state and federal law. *See Jimenez v. Quarterman,* 555 U.S. 113, 120 (2009)(relying upon state court actions to determine finality of conviction for purposes of § 2244(d)(1)(A)).

Because the state trial court granted Petitioner's motion to correct illegal sentence in March 2017, removing the three-year minimum mandatory term of imprisonment, under both state and federal law, this was not a ministerial act, but constitutes a "new judgment" for purposes of AEDPA's second or successive habeas petition determinations. *See Ferreira v. Sec'y, Dep't of Corr.,* 494 F.3d at 1292-93 (citing *Burton v. Stewart,* 549 U.S. 147 (2007)); *Jordan v. State,* 143 So. 3d 335, 339-40 (Fla. 2014). This is especially true where, as here, the trial court then entered a new sentence in December 2017, removing the minimum mandatory term of

imprisonment of the armed robbery conviction. It is true that the granting of Petitioner's Rule 3.800 motion did not alter the 1981 conviction, nor did it reduce the term of his imprisonment, since he had already served the three-year minimum mandatory term of imprisonment at the time the motion was granted, but it was not, as Respondent suggests, a "ministerial act," as it allowed the state court discretion at resentencing. *See Jordan v. State,* 143 So. 3d at 339-40.

The December 2017 sentence is the current "judgment authorizing the prisoner's confinement." Specifically, because there has been an intervening judgment between the prior habeas corpus petitions and the filing of this petition, this federal petition is not second or successive. *See Magwood v. Patterson,* 561 U.S. at 339-40. Thus, this federal habeas petition is not subject to dismissal under § 2244(b). The Respondent's argument to the contrary should be rejected.

### V. Statute of Limitations Defense

Next, it must be determined whether this current federal habeas petition is time-barred. The AEDPA implemented a one-year statute of limitations on petitions for writ of habeas corpus filed by state prisoners. *See* 28 U.S.C. § 2244(d)(1) ("A 1-year period of limitation shall apply to an application for a writ of habeas corpus . . ."). Specifically, AEDPA provides that the limitations period shall run from the latest of "(A) the date on which the judgment became final by the

conclusion of direct review or the expiration of the time for seeking such review." *Id.* Respondent argues that this federal petition is time-barred, basing its calculations on the premise that the federal limitations period began in 1982, when the original judgment became final, when the 90-day period for seeking certiorari review expired. [ECF 7, pp. 3-5; ECF 11, pp. 3-5]. Respondent relies upon *Patterson v. Sec'y, Fla. Dep't of Corr.,* 849 F.3d 1321 (11th Cir. 2017)(*en banc*) claiming again that the March 2017 order was not a "new judgment." [ECF 11, pp .6-8]. Respondent concludes that the Petitioner "is still incarcerated pursuant to his original [1981] life sentence." [*Id.,* p. 8]. Respondent relies on the Tenth Circuit's opinion in *Burks v. Raemisch,* 680 F. App'x 686 (10th Cir. 2017), finding that resentencing does not restart the AEDPA's limitations period where the prisoner seeks to bring claims challenging only the original conviction. [*Id.*].

The Tenth Circuit opinion relied upon by Respondent is not binding on this Circuit. "[E]ven when there is a split among the courts on an issue," this court "is bound to follow the controlling precedent of this [Eleventh] circuit, not a different rule adopted by a different court." *See Springer v. Wal-Mart Assocs. Grp. Health Plan,* 908 F.2d 897, 900 & n. 1 (11th Cir. 1990). This is especially true given the strength of the prior panel precedent rule in the Eleventh Circuit. *See Smith v. GTE Corp.,* 236 F.3d 1292, 1303 (11th Cir. 2001) (explaining that the prior panel

precedent rule binds a panel to a prior decision's holding even if the panel is convinced that the prior precedent is incorrect).

The undersigned finds that the Eleventh Circuit's *Insignares* opinion controls the timeliness analysis of this federal petition. Respondent's argument that *Insignares* is distinguishable fails. Respondent argues that Petitioner did not receive a new judgment, but only a ministerial correction to the original judgment. [*Id.,* p. 9]. In *Insignares*, the defendant filed a second federal habeas petition in 2011, following the trial court's grant of a 2009 Rule 3.800, reducing the minimum mandatory term of imprisonment for his attempted-murder conviction from 20 years to 10 years, but otherwise left the conviction and sentence intact. *See Insignares v. Sec'y, Fla. Dep't of Corr.,* 755 F.3d at 1277. Similarly, Petitioner's 2017 re-sentencing judgment constitutes a new judgment which restarted the federal one-year limitations period, thereby making this federal proceeding timely filed.

Under the federal habeas corpus statute, 28 U.S.C. § 2254(a), as modified by the AEDPA, § 2244(d), a state habeas petition may challenge only the state-court judgment pursuant to which the petitioner is being held in custody. The only "judgment that matters for purposes of § 2244 is 'the judgment authorizing the prisoner's confinement.'" *Patterson*, 849 F.3d at 1325 (*en banc*) (quoting *Magwood*, 561 U.S. at 332).

As previously noted, the trial court entered a new Sentencing Order on December 21, 2017 reflecting the removal of the three-year minimum mandatory term of imprisonment on Count 1. [ECF 20-1]. Therefore, the 2017 sentence constitutes a "new judgment" and restarts the one-year federal limitations period. *See Insignares v. Sec'y, Fla. Dep't of Corr.,* 755 F.3d at 1278. As in *Insignares,* the December 2017 re-sentencing judgment is "the judgment that matters for purposes of section 2244" because it is the judgment authorizing Petitioner's confinement. *See Patterson v. Sec'y, Dep't of Corr.,* 849 F.3d at 1325 (quoting *Magwood v. Patterson,* 561 U.S. at 324). For purposes of §2244(d)(1)(A), "the final judgment means the sentence." *See Vaughan v. Sec'y, Florida Dep't of Corr.,* 770 F. App'x 554, 555 (11th Cir. May 1, 2019)(unpub.)(citing *Burton v. Stewart,* 549 U.S. 147, 156 (2007)).

Further, under Florida law, where a trial court grants a Rule 3.800 motion, it is not a "purely ministerial" act, and a defendant "has a right to be present" and to be represented by counsel at any resentencing proceeding from the granting of a rule 3.800(a) motion. *See Jordan v. State,* 143 So. 3d at 339-40 (quoting *Mullins v. State*, 997 So. 2d at 445)(finding "a resentencing in which a trial judge has discretion is not a ministerial act" and requires a defendant's presence.").

14

There is no question here, as in *Insignares,* that a new judgment was entered on December 21, 2017. Therefore, the one-year federal limitations began to run on the date that judgment became final. Because no appeal of that resentencing order appears to have been filed, it became final on **Monday, January 22, 2018,[4]** when the thirty-day period for prosecuting a direct appeal expired. *See* Fla. R. App. P. 9.110(b); *Demps v. State,* 696 So. 2d 1296, 1297, n.1 (Fla. 3rd DCA 1997) (citing *Ramos v. State,* 658 So. 2d 169, 170 (Fla. 3rd DCA 1995)). *See generally Ferreira,* 494 F.3d at 1293.

Therefore, the filing of this federal petition in 2017, before that judgment became final, is timely. *See Insignares v. Sec'y, Fla. Dep't of Corr.,* 775 F.3d at 1281. Respondent's argument that this federal petition is time-barred is not meritorious and should be rejected.

## VI. Exhaustion and Procedural Default

Although the court finds this federal petition is not "successive," or "time-barred" under the AEDPA, other restrictions still apply. *See Magwood v. Patterson,* 561 U.S. at 340 (emphasizing that "procedural-default rules continue to constrain

---

[4]Under Fed.R.Civ.P. 6(a)(1), "in computing any time period specified in ... any statute that does not specify a method of computing time ... [the court must] exclude the day of the event that triggers the period[,] count every day, including intermediate Saturdays, Sundays, and legal holidays[, and] include the last day of the period," unless the last day is a Saturday, Sunday, or legal holiday. Where, as here, the date falls on a weekend, the Undersigned has excluded those days from its computation.

review of claims in all applications, whether the applications are 'second or successive' or not.").

1. Applicable Law

It is well settled that, before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging a state conviction. *See* 28 U.S.C. § 2254(b), (c); *Davila v. Davis,* 137 S. Ct. 2058, 2064 (2017) (citing § 2254(b)(1)(A)). "The exhaustion requirement is designed to avoid the 'unseemly' result of a federal court 'upsett[ing] a state court conviction without' first according the state courts an 'opportunity to . . . correct a constitutional violation,'. . .." *Davila v. Davis,* 137 S. Ct. at 2064 (quoting *Rose v. Lundy*, 455 U.S. 509, 518 (1982)); *Rivera v. Sec'y, Dep't of Corr.,* 737 F. App'x 946, 952-53 (11th Cir. 2018) (unpub.)(quoting *O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999)).

To properly exhaust state court remedies, a petitioner must fairly present every issue raised in his or her federal petition to the state's highest court, either on direct appeal or on collateral review. *Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 456–59 (11th Cir. 2015). Exhaustion is not satisfied if a petitioner merely presents the state court with "all the facts necessary to support the claim" or even if a "somewhat similar state-law claim was made." *Kelley v. Sec'y for Dept. of Corr.*, 377 F.3d 1317, 1344-45 (11th Cir. 2004)(citation omitted). A petitioner must instead

"present his claims to the state courts such that they are permitted the 'opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim.'" *Id*.

## A. Exhaustion

Respondent argues that the claims raised here are unexhausted and procedurally defaulted from federal habeas corpus review. [ECF 7, pp. 5-7; 11, pp. 9-11].

Petitioner concedes he did not present his claims in this latest habeas petition to the state courts. [ECF 1, p. 12]. Petitioner also cannot return to state court to present these claims in a subsequent post-conviction motion. *See* Fla. R. Crim. P. 3.850(b) (establishing a two-year limitations period for a motion under Rule 3.850).

Petitioner argues that the procedural default of the claims should be excused, relying upon *Martinez v. Ryan,* 566 U.S. 1 (2012), because the state trial court did not appoint counsel to represent him in the initial Rule 3.850 proceeding, and that counsel he retained to file another motion in 1986, failed to raise the issues. [*Id.*]. In *Martinez v. Ryan,* the Supreme Court of the United States held that "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial review collateral proceeding, there was

no counsel or counsel in that proceeding was ineffective." *Martinez v. Ryan,* 566

U.S. at 17. This *Martinez* exception only applies, however, where:

> (1) a state requires a prisoner to raise ineffective-trial-counsel claims at the initial-review stage of a state collateral proceeding and precludes those claims on direct appeal; **(2) the prisoner did not comply with state rules and failed to raise ineffective-trial-counsel claims properly in his state initial-review collateral proceeding;** (3) the prisoner had no counsel (or his appointed counsel was ineffective by not raising ineffective-trial-counsel claims) in the initial-review collateral proceeding; **and** (4) not excusing the procedural default would cause the prisoner to lose a "substantial" ineffective-trial-counsel claim.

*See Rigg v. Warden, Blackwater River Corr. Facility,* 685 F. App'x 812, 815 (11th

Cir.), *cert. denied, Rigg v. Maiorana,* 138 S. Ct. 485 (2017). "A 'substantial' claim

is one that has 'some merit.' " *Id.* at 816 (quoting *Martinez v. Ryan*, 566 U.S. at 14).

As discussed below, Petitioner has not met the second requirement to excuse the

procedural default of the claim.

2. <u>Analysis</u>

It is uncontroverted that the four claims raised in this habeas petition,

challenging trial counsel's effectiveness on four specified grounds, have not been

exhausted in the state courts. [ECF 1, p. 12].

Petitioner cannot demonstrate deficiency or prejudice under *Strickland* arising

from his collateral counsel's failure to pursue the claims challenging counsel's

effectiveness in 1986, approximately four years after his 1981 conviction became

18

final. Under Florida law, Petitioner had two years from the time his 1981 judgment became final to raise any challenge to that conviction in a motion for post-conviction relief, pursuant to Fla. R. Crim. P. 3.850(b). However, a defendant may file the motion more than two years after the judgment and sentence becomes final if "the facts on which the claim is predicated were unknown to the movant or the movant's attorney and could not have been ascertained by the exercise of due diligence, and the claim is made within 2 years of the time the new facts were or could have been discovered with the exercise of due diligence.. . ." *See* Fla. R. Crim. P. 3.850(b)(1); *Jules v. State,* 233 So. 3d 1196, 1198 (Fla. 3rd DCA 2017).

Fla. R. Crim. P. 3.850(b)(1)-(3) addresses when a trial court can consider a Rule 3.850 motion filed more than two years after the judgment and sentence become final. Any attempt by Petitioner to argue in the state court that his collateral counsel was ineffective for failing to raise the issues, relying on *Martinez,* has been rejected by the Florida courts. *See Ford v. State,* 168 So. 3d 224 (Fla. 2015)(citations omitted).

Petitioner has not demonstrated that he acted diligently in ascertaining the nature of the claims within two years from the time his original conviction became final. Certainly, the factual predicate of the claims could have been discovered by Petitioner well before he retained collateral counsel in 1986 and certainly when he

19

first filed his *pro se* motion. He did not raise the claim at that time, and any effort to excuse his failure to raise the claims during that proceeding should be rejected. *See Stephens v. State,* 823 So. 2d 180, 181 (Fla. 1st DCA 2002); *McFadden v. State,* 904 So. 2d 570, 571 (Fla. 4th DCA 2005); *Lyell v. State,* 872 So. 2d 447 (Fla. 2d DCA 2004); *Green v. State,* 860 So. 2d 1055, 1056, n. 1 (Fla. 5th DCA 2003).

Petitioner cannot demonstrate prejudice arising from collateral counsel's failure to pursue challenges to his 1981 conviction in 1986, well after the two-year period for doing so expired, as any such challenge would have been dismissed as untimely and improperly filed under Florida law. Under federal law, "due diligence" is a question of fact, that does not require "maximum feasible diligence," but does require "reasonable diligence," meaning reasonable efforts, not demonstrated here. *See Brown v. Sec'y, Dep't of Corr.,* 750 F. App'x 915 (11th Cir. 2018)(quoting *Holland v. Florida,* 560 U.S. 631, 653 (2010) and *San Martin v. McNeil,* 633 F.3d 1257, 1267 (11th Cir. 2011)). A prisoner need not make repeated exercises in futility or exhaust every available option. *See Brown v. Sec'y, Dep't of Corr.,* 750 F. App'x at 928-29 (citing *Downs v. McNeil,* 520 F.3d 1311, 1323 (11th Cir. 2008)). However, neither here nor in the state forum has Petitioner established due diligence to overcome the lack of exhaustion.

## B. Procedural Default

The lack of exhaustion discussed above does not end this court's inquiry. It must next be determined whether the claims are procedurally defaulted from review in this habeas proceeding.

1. <u>Applicable Law</u>

A federal habeas petitioner's failure to present a claim in accordance with state procedural rules generally precludes federal habeas review of the claim. *See Coleman v. Thompson,* 501 U.S. 722, 735, n. 1(1991) (citing *Harris v. Reed,* 489 U.S. 255, 269-270 (1989)(O'Connor, J., concurring); *Teague v. Lane,* 489 U.S. 288, 297-98 (1989)); *Howard v. Warden, Calhoun State Prison,* No. 18-14571-B, 2019 WL 1931866, at *1 (11th Cir. Mar. 29, 2019)(citing *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001)(holding claims held to be procedurally defaulted under state law cannot be addressed by federal habeas courts).

Where an unexhausted claim would be subject to a state procedural bar if Petitioner returned to state court, the district court may treat the claim as procedurally defaulted for purposes of federal habeas corpus relief, even absent a state court determination to that effect, if it is clear that any future attempts at exhaustion would be futile under state law. *Bailey v. Nagle,* 172 F.3d 1299, 1305 (11th Cir. 1999); *Coleman v. Thompson,* 501 U.S. at 735, n. 1.

21

Petitioner can show cause to excuse the procedural default by alleging that some objective factor, external to the defense, impeded his effort to raise the claim properly in the state court. *See Murray v. Carrier,* 477 U.S. 478, 488, (1986); *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). To show prejudice, a petitioner must demonstrate that the "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." *See McCoy v. Newsome,* 953 F.2d 1252, 1261 (11th Cir. 1992)(*quoting Murray v. Carrier,* 477 U.S. 478, 494 (1986)). The allegations of cause and prejudice must be factually specific, not conclusory. *Harris v. Comm'r, Ala. Dep't of Corr.,* 874 F.3d 682, 691 (11th Cir. 2017).

Again, pursuant to Fla. R. Crim. P. 3.850(b), a defendant must file a motion for post-conviction relief "no more than 2 years after the judgment and sentence become final. . . ." A defendant may, however, file the motion more than two years after the judgment and sentence became final if "the facts on which the claim is predicated were unknown to the movant or the movant's attorney and could not have been ascertained by the exercise of due diligence, and the claim is made within 2 years of the time the new facts were or could have been discovered with the exercise of due diligence. . . ." *See* Fla. R. Crim. P. 3.850(b)(1); *Jules v. State,* 233 So. 3d 1196, 1198 (Fla. 3rd DCA 2017).

2. <u>Analysis</u>

Petitioner has not shown diligence to excuse the procedural default of the claims. While Petitioner retained counsel in 1986 to file another Rule 3.850 motion, he fails to explain here cause and prejudice arising from collateral counsel's failure to pursue the claim. If he is again relying on *Martinez v. Ryan,* because his collateral counsel was ineffective for failing to pursue the claims, as will be demonstrated below, Petitioner has not shown that the claims are substantially meritorious. In *Martinez v. Ryan,* 566 U.S. 1 (2012), the Supreme Court expanded what "cause" may excuse a procedural default, determining that when a state court claim of "ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Martinez v. Ryan,* 566 U.S. at 17.

Therefore, relief is available if (1) state procedures make it virtually impossible to actually raise ineffective assistance of trial counsel claims on direct appeal; and (2) Petitioner's state collateral counsel was ineffective for failing to raise ineffective assistance of trial counsel claims in the state proceedings. *See Lambrix v. Sec'y, Fla. Dep't of Corr.,* 756 F.3d 1246, 1261 n.31 (11th Cir. 2014).

23

To prove that a claim is "substantial," Petitioner must demonstrate that the claim has some merit. *Martinez v. Ryan,* 566 U.S. at 10. In *Trevino v. Thaler,* 569 U.S. 413, 429 (2013), the Supreme Court further explained that the exception recognized in *Martinez* applies when a state's procedural framework makes it highly unlikely that a defendant, in a typical case, will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal. As applied, Petitioner has not demonstrated that the claims are substantially meritorious.

Even where Petitioner fails to make a showing of cause and prejudice to excuse the procedural default of his claims, he may nonetheless receive consideration on the merits "if he can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result." *Ward v. Hall,* 592 F.3d 1144, 1157 (11th Cir. 2010); *see also, McQuiggen v. Perkins,* 569 U.S. 383, 387 (2013). This exception requires Petitioner to demonstrate actual innocence, not just legal innocence. *See Rozzelle v. Sec'y, Fla. Dep't of Corr.,* 672 F.3d 1000, 1011 (11th Cir. 2012). "Only if [the petitioner] can meet the requirements for proving his actual innocence will he 'then be entitled to have his defaulted claim'... considered on its merits." *Id*. at 1285. No such showing has been made here. To the contrary, Petitioner's argument is one of legal innocence, not factual, actual innocence.

24

Where Petitioner attempts to assert here a claim of "fundamental error" regarding the lawfulness of his initial 1981 conviction, such a claim "is not a valid ground for an untimely postconviction motion." *See Hughes v. State,* 22 So. 3d 132, 134 (Fla. 2nd DCA 2009)(where the court made it clear it was writing to "dispel the common misconception among prisoners that 'fundamental error' can be reviewed in a postconviction proceeding at any time, including beyond the two-year period normally permitted for motions under rule 3.850. . . ").

Since Petitioner did not properly exhaust his claims in the state courts, and the trial court where he would be required to raise the claims in order to meet the exhaustion requirement would find the claims procedurally barred, the claims are procedurally defaulted for purposes of federal habeas corpus review. *See Harris v. Reed,* 489 U.S. 255, 269-70 (1989)(O'CONNOR, JR., concurring); *Teague v. Lane,* 489 U.S. 288, 297-98 (1989). Therefore, the claims should be procedurally defaulted from review here.

Although the undersigned finds the claims were both unexhausted and procedurally defaulted, review of the claims on the merits follows to establish that Petitioner has not shown a substantial meritorious claim sufficient to overcome the default. *See Valle v. Sec'y, Fla. Dep't of Corr.*, 459 F.3d 1206, 1213 (11th Cir. 2006).

## VII. Governing Legal Principles

### A. Standard of Review

"'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" *Ledford v. Warden, Ga. Diagnostic & Classification Prison*, 818 F.3d 600, 642 (quoting *Greene v. Fisher*, 565 U.S. 34, 38 (2011)) (quotation marks omitted)). This standard is both mandatory and difficult to meet. *White v. Woodall,* 572 U.S. 415, 420 (2014).

The AEDPA provides that a federal court may not grant a habeas petition relief on any claim adjudicated on the merits in state court unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Harrington v. Richter,* 562 U.S. 86, 97-98 (2011); *Rimmer v. Sec'y, Fla. Dep't of Corr.,* 876 F.3d 1039, 1053 (11th Cir. 2017), cert. denied *Rimmer v. Jones,* 138 S. Ct. 2624 (2018).

The AEDPA imposes a "highly deferential standard for evaluating state-court rulings and demands that state court decisions be given the benefit of the doubt."

*Renico v. Lett,* 559 U.S. 766, 773 (2010)(quotation marks and citation omitted); *Lee v. Comm'r, Ala., Dep't of Corr.*, 726 F.3d 1172, 1192 (11th Cir. 2013)(citations omitted). The Eleventh Circuit "'has stressed that in applying AEDPA deference federal courts are not to take a magnifying glass to the state court opinion or grade the quality of it.'" *See Wiggins v. Sec'y, Fla. Dep't of Corr.*, 766 F. App'x 817 (11th Cir. Mar. 12, 2019) (unpub.) (quoting *Meders v. Warden, Ga. Diagnostic Prison,* 911 F.3d 1335, 1350 (11th Cir. 2019)). Thus, deferential review under § 2254(d) is generally limited to the record that was before the state court that adjudicated the claim on the merits. *See Cullen v. Pinholster,* 563 U.S. 170, 182 (2011); *Gill v. Mecusker*, 633 F.3d 1272, 1288 (11th Cir. 2011).

For purposes of federal habeas review, "clearly established federal law" consists of the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor,* 529 U.S. at 365. The relevant law is the federal law that existed on the date a petitioner's conviction became final. *Gary v. Hall,* 558 F.3d 1229, 1254 (11th Cir. 2009).

To review a federal habeas corpus claim, the district court must first identify the last state court decision, if any, that adjudicated the merits of the claim. *See Marshall v. Sec'y, Fla. Dep't of Corr.,* 828 F.3d 1277, 1285 (11th Cir. 2016). The state court is not required to issue an opinion explaining its rationale, because even

27

the summary rejection of a claim, without explanation, qualifies as an adjudication on the merits which warrants deference. *See Harrington v. Richter,* 562 U.S. at 100; *See Meders v. Warden, Ga. Diagnostic Prison,* 911 F.3d 1335, 1351 (11th Cir. 2019)(citing *Harrington v. Richter,* 562 U.S. 86, 100 (2011)). To be entitled to federal habeas corpus relief, a petitioner must show that the state court ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Lee, Ala. Dep't of Corr.*, 726 F.3d at 1192 (11th Cir. 2013)(quoting *Harrington v. Richter,* 560 U.S. 86, 101-102 (2011)).

A state court decision is "contrary to" clearly established federal law if it applies a rule that contradicts the governing law set forth by the United States Supreme Court, or arrives at a result that differs from Supreme Court precedent when faced with materially indistinguishable facts. *Lee v. Ala., Dep't of Corr.,* 726 F.3d at 1192 (quoting *Bell v. Cone,* 535 U.S. 685, 694 (2002)).

"A state court decision involves an 'unreasonable application' of clearly established federal law 'if the state court correctly identifies the governing legal principle' from the relevant Supreme Court decisions 'but unreasonably applies it to the facts of the particular case.'" *Lee v. Comm'r, Ala. Dep't of Corr.,* 726 F.3d at 1192 (quoting *Bell v Cone,* 535 U.S. at 694); *Williams v. Taylor,* 529 U.S. 362, 413

(2000). The term "clearly established Federal law" refers to the decisions and not *dicta* of the Supreme Court, at the time of the relevant state court decision. *See Lee v. Comm'r, Ala. Dep't of Corr.,* 726 F.3d at 1192 (quoting *Williams v. Taylor,* 529 U.S. at 412; *Burns v. Sec'y, Fla. Dep't of Corr.*, 720 F.3d 1296, 1301-02 (11th Cir. 2013)). Thus, where there is Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law. *See Woods v. Donald,* 135 S.Ct. 1372, 1377 (2015). If, however, the state court decision is contrary to clearly established federal law, the federal habeas corpus court must independently consider the merits of Petitioner's claim. *See Panetti v. Quarterman,* 551 U.S. 930, 954 (2007).

Notably, where "no state court has adjudicated the merits of a claim that was properly presented, 'federal habeas review is not subject to the deferential standard that applies under AEDPA. . . . Instead, the claim is reviewed *de novo*.'" *Reaves v. Sec'y, Fla. Dep't of Corr.,* 872 F.3d 1137, 1151 (11th Cir. 2017)(alteration in original)(quoting *Cone v. Bell,* 556 U.S. 449, 472 (2009)). In *Johnson v. Williams,* 568 U.S. 289 (2013), the Supreme Court explained that a state court decision is an adjudication "on the merits" and still entitled to AEDPA deference when it "addresses some but not all of a defendant's claims." *Johnson v. Williams,* 568 U.S. at 298. "The Supreme Court observed that there are good reasons why state courts

do not address every single argument made by a defendant, including 'instances in which a state court may simply regard a claim as too insubstantial to merit discussion.'" *Lee v. Comm'r, Ala. Dep't of Corr.*, 726 F.3d at 1212 (quoting *Johnson v. Williams,* 568 U.S. at 299). In any event, this court is authorized to deny a claim for federal habeas corpus relief when the claim is subject to rejection under *de novo* review, regardless of whether AEDPA deference applies. *See Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010)(holding federal courts can deny writs of habeas corpus under § 2254 by engaging in *de novo* review when it is unclear whether AEDPA deference applies, because a habeas petition will not be entitled to habeas relief if his claim is rejected on *de novo* review); *Connor v. GDCP Warden,* 784 F.3d 752, 767, n. 16 (11th Cir. 2015)("[B]ecause we conclude that Mr. Connor would not be entitled to habeas relief under *de novo* review, we affirm the District Court's denial of relief under that standard without resolving whether AEDPA deference applies.").

The "AEDPA's statutory scheme is designed to strongly discourage" petitioners from presenting new evidence and ensures that "[f]ederal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." *Cullen v. Pinholster,* 563

U.S. at 185 (quoting *Williams v. Taylor,* 529 U.S. at 437; *Harrington v. Richter,* 562 U.S. 82, 103 (2011); *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977)).

Finally, it is well settled that Petitioner bears the burden of establishing his right to federal habeas corpus relief and proving all of the facts necessary to demonstrate a constitutional violation. *See Fillmore v. Perry,* 163 F. App'x 819, 820 (11th Cir. Jan. 20, 2006)(unpub.)(citing *Romine v. Head,* 253 F.3d 1349, 1357 (11th Cir. 2001)).

### B. Ineffective Assistance of Counsel Principles

Petitioner raises four claims challenging counsel's effectiveness, which are governed by the Supreme Court's two-pronged test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to the assistance of counsel during criminal proceedings against them. *Strickland v. Washington,* 466 U.S. at 684–85. When assessing counsel's performance under *Strickland,* the court employs a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. A § 2254 petitioner must provide factual support for his contentions regarding counsel's performance. *Smith v. White,* 815 F.2d 1401, 1406–07 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the

31

*Strickland* test. *See Boyd v. Comm'r, Ala. Dep't of Corr.,* 697 F.3d 1320, 1333–34 (11th Cir. 2012).

"[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance ...." *Burt v. Titlow,* 571 U.S. 12, 20 (2013). "Where the highly deferential standards mandated by *Strickland* and the AEDPA both apply, they combine to produce a doubly deferential form of review that asks only 'whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.'" *Gissendaner v. Seaboldt,* 735 F.3d 1311, 1323 (11th Cir. 2013).

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate that: (1) his counsel's performance was deficient, falling below an objective standard of reasonableness; and, (2) he suffered prejudice resulting from that deficiency. *Strickland,* 466 U.S. at 687-88. Strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. *Strickland* at 690-91. To uphold a lawyer's strategy, a court need not attempt to divine the lawyer's mental processes underlying the strategy, because there are "countless ways to provide effective assistance in any given case." *Strickland,* 466 U.S. at 689. No lawyer can be expected to have considered all those ways. *Chandler v. United States,* 218 F.3d 1305, 1316 (11th Cir. 2000).

To establish deficient performance, the movant must show that, in light of all circumstances, counsel's performance was outside the wide range of professional competence. *Strickland, supra.; Cummings v. Sec'y for Dep't of Corr.,* 588 F.3d 1331, 1356 (11th Cir. 2009). The Court's review of counsel's performance should focus on "not what is possible or what is prudent or appropriate but only [on] what is constitutionally compelled." *Chandler v. United States,* 218 F.3d 1305, 1313 (11th Cir. 2000)(*en banc*); *Burger v. Kemp,* 483 U.S. 776 (1987). Counsel is not ineffective for failing to raise non-meritorious issues. *Chandler v. Moore,* 240 F.3d 907, 917 (11th Cir. 2001). Counsel is also not required to present every non-frivolous argument. *Dell v. United States,* 710 F.3d 1267, 1282 (11th Cir. 2013).

Regarding the prejudice component, the Supreme Court has explained "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694. A court need not address both prongs of *Strickland* if the defendant makes an insufficient showing on one of the prongs. *Strickland,* 466 U.S. at 697; *Brown v. United States,* 720 F.3d 1316, 1326 (11th Cir. 2013).

## VIII. Facts Adduced at Trial

Given the claims raised in this proceeding, a summary of the evidence adduced at trial follows as it amply supports Petitioner's conviction for armed robbery with a firearm of a convenience store. On May 4, 1980, Detective Gary Lee Wilson ("Det. Wilson"), with the Ft. Lauderdale Police Department ("Ft. Laud. PD") responded to a call that a 1966 Pontiac Bonneville was abandoned on S.W. 33rd Way and 23rd Street, a couple of blocks from Anthony Castillon's ("Castillon") home, and a few blocks from a Farm Store, located at 3417 Davie Boulevard, that had been robbed the day before. [90CV02921 ECF 12, T. 237-39, 282].[5] When he arrived on the scene, Det. Wilson found a woman's nylon stocking laying on the grass on the passenger side of the vehicle. [*Id.,* T. 240]. He also observed metal screws and part of a dashboard outside the vehicle. [*Id.,* T. 241-42]. There were wires hanging down from where an AM-FM cassette player and equalizer had been taken. [*Id.,* T. 248]. On the floor of the vehicle was a brown paper bag, used by the Farm Store clerk, to hand Petitioner the money during the robbery. [*Id.,* p. 242].

Castillon was under investigation in reference to a possible fencing operation involving stolen property. [*Id.,* T. 244]. It was suspected that Castillon might be in possession of the .32 caliber firearm used during the Farm Store robbery and the

---

[5]The trial transcripts are referred to in this Report by the letter "T" followed by the corresponding page number.

homicide and robbery of the vehicle. [*Id.,* T. 244]. With the assistance of a confidential informant ("CI"), law enforcement purchased the .32 caliber, Smith & Wesson handgun used during the Farm Store robbery and the homicide. [*Id.,* T. 244-52, 272-82].

After Castillon was taken into custody, he cooperated with law enforcement and testified as a prosecution witness, pursuant to an immunity agreement with the state. [*Id.,* T. 298-301]. According to Castillon, he lent Roland Sprint ("Sprint") a .32 Smith & Wesson handgun on May 3, 1980. [*Id.*, T. 287-89]. On May 4, 1980, Sprint and Petitioner came to Castillon's home. [*Id.,* T. 292-94]. Sprint was carrying a wooden wine box, which Castillon identified in court; and, Petitioner was holding a brown paper bag. [*Id.,* T. 293]. Castillon testified that inside the bag was money and the firearm he had lent Sprint. [*Id.*, T. 293-94].

At that time, Sprint, in Petitioner's presence, described how he and Petitioner had committed an armed robbery and stolen the Pontiac and then robbed the Farm Store. [*Id.,* T. 294-95]. Castillon admits he was shown the stolen vehicle, and then removed the Pioneer AM-FM radio and Audiovox equalizer from inside the car on the evening of May 4, 1980. [*Id.,* T. 297]. Sprint and Petitioner gave Castillon some of the money stolen during the robbery. [*Id.,* T. 297].

35

On May 5, 1980, when Castillon went to Sprint's house, he learned that Petitioner was no longer staying there. [*Id.,* T. 299-300]. The defense vigorously cross-examined Castillon regarding his immunity from prosecution for accessory after the fact to the charged crimes, including the Farm Store robbery; his motive for testifying, and the benefit he anticipated receiving in exchange for his testimony. [*Id.,* p. 298-311].

Following Petitioner's arrest in November 1980, after being advised of and waiving his constitutional rights, he provided law enforcement with a statement which was played for the jury. [*Id.,* T. 320, 340-363]. At the time, Petitioner explained that he had been drinking with Sprint, when Sprint asked him to accompany him to rob a store. [*Id.,* T. 343]. Petitioner claims Sprint threatened to harm him if he did not accompany him. [*Id.,* T. 344]. According to Petitioner, he knew Sprint had violent tendencies and was afraid of him. [*Id.*].

After killing the victim and stealing the Pontiac, Petitioner states he drove the vehicle to a Farm Store, where Sprint, who was wearing a nylon stocking over his face, pointed a gun at the store clerk, who was ordered to put the money in a sack and throw it into the car. [*Id.,* T. 345-46]. After the robbery, Petitioner drove the car about five to six blocks, near Castillon's house, where Sprint began wiping it down. [*Id.,* T. 346]. Afterwards, Sprint handed Petitioner the gun and Sprint carried a

36

wooden box, as they walked about four blocks to Castillon's house. [*Id.,* T. 346].

Petitioner admitted giving the gun to Castillon, and states Spring gave Castillon the

wooden box to hold. [*Id.,* T. 347, 349, 360, 362]. He recalled the stolen vehicle was

a red Pontiac Bonneville with a white interior. [*Id.,* T. 348-49]. Petitioner reiterated

that he did not go to the police to report the incident because he felt threatened by

Sprint and claims not to have accompanied Sprint freely. [*Id.,* T. 365].

Daniel Cortez ("Cortez"), the sales clerk at the Farm Store testified that on

May 4, 1980, he was robbed at gun point by a man wearing a nylon mask. [*Id.,*

T. 373]. Cortez could not recall what the driver of the vehicle looked like because

he was focused on the gun pointed at him. [*Id.,* T. 373-74, 379]. Cortez insists the

passenger ordered him to hand over the money and the cash drawer. [*Id.,* T. 374-75].

As the car was pulling away from the store, Cortez wrote down the vehicle's license

plate on a piece of paper, which he identified in court. [*Id.,* T. 377].

Jorge Villareal ("Villareal") testified that he knows Sprint, who lives in a

townhome complex behind his. [*Id.,* T. 382]. Sprint introduced him to Petitioner,

who had been living with Sprint for a few days. [*Id.,* T. 384-85]. The day after the

homicide, Petitioner was sitting outside of Sprint's house, when he pulled a .38

caliber gun out of his sock and shot at a beer can. [*Id.,* T. 386]. Several people

gathered around to watch, and Tracy McNamara turned to Petitioner, asking him if

he was going to play "Russian Roulette." [*Id.,* T. 387-88]. In response, Petitioner opened the firearm's cylinder, looked inside, then put the gun to his head, and fired it once. [*Id.*]. As Sprint and the others ran, Petitioner burst out laughing. [*Id.*].

Sue Anne Dusenberry ("Dusenberry"), Castillon's ex- girlfriend, was called as a defense witness at trial. [*Id.,* T. 415-16]. She recalled Sprint went to Castillon's home on May 3, 1980 and borrowed a gun from him. [*Id.,* T. 417-18]. Dusenberry also testified that Sprint and Petitioner came by Castillon's house on the following day, May 4, 1980. [*Id.,* T. 418]. Sprint was carrying the gun and the wooden wine box. [*Id.*]. After entering the living room, she heard Sprint speaking with Castillon about having stolen a car and robbed a store, but claims Petitioner did not have much to say at all. [*Id.,* pp. T. 419-20]. She observed Sprint give Castillon some money. [*Id.*]. She could not recall whether Petitioner gave Castillon any money. [*Id.*]. She also did not see Sprint return the gun to Castillon, claiming it took place in another room, while Petitioner remained in the living room. [*Id.*, T. 421]. She also could not recall whether she ever saw a paper bag that evening. [*Id.*, T. 422]. During cross-examination, she admitted she was not paying a lot of attention to what was going on that night. [*Id.,* T. 423]. She also conceded she could not recall exactly what Petitioner said during that visit. [*Id.*]. She admitted, however, that Petitioner did not appear to be afraid or scared of Sprint. [*Id.,* T. 424].

Thomas Dwayne Rice ("Rice") testified that he met Sprint in October, while confined at the Broward County Jail, when he was brought into his cell. [*Id.*, T. 427]. Sprint had to be transferred out because other inmates were "about to get him." [*Id.,* T. 431]. Later, he met Petitioner, who was also his cellmate at the Broward County Jail. [*Id.,* T. 428]. According to Rice, when he told Sprint that he "liked" Petitioner and wanted to know what he was involved in, Sprint responded, "Tom, don't let them hurt Billy [Petitioner]. Billy was there; but what happened was not Billy's fault." [*Id.,* T. 429-430, 433].

## IX. Discussion of Claims

### A. Lawfulness of Information

In **claim 1,** Petitioner asserts his attorney was ineffective for failing to challenge the court's lack of jurisdiction over the Information charging him with armed robbery with a firearm of Daniel Cortez in Case No. 81-634CF10B. [ECF 1, p. 4]. Any attack to Case Nos. 80-9947CF10B and 80-10660CF is not under consideration in this habeas proceeding. The Information in Case No. 81-634CF10B was not fatally defective. [90CV2921 ECF 12, pp. 168-29]. Petitioner does not explain why the Information in 81-634CF10B was fatally defective. In any event, Petitioner cannot demonstrate deficiency or prejudice under *Strickland*. As a result, this claim remains procedurally defaulted.

Petitioner was charged with and found guilty of armed robbery with a deadly, in violation of Fla. Stat. § 812.13(2)(a), following a jury verdict. [ECF 7-1, p. 5]. In 1980, robbery was defined as "(1) the taking of money or other property which may be the subject of larceny from the person or custody of another by force, violence, assault, or putting in fear; (2)(a) If in the course of committing the robbery the offender carried a firearm or other deadly weapon, then the robbery is a felony of the first degree, punishable by imprisonment for a term of years not exceeding life imprisonment or as provided in s. 775.082, s. 775.083, or s. 775.084. . . ." Fla. Stat. § 812.13(1)-(2)(a).

The court instructed the jury that, as to Count I, on May 4, 1980, Petitioner did "unlawfully take from a person or custody of Daniel Cortez, certain property of value, to-wit: U.S. currency, with the intent to permanently deprive Daniel Cortez of the right to the property or a benefit thereof by force, violence, assault or putting the said Daniel Cortez in fear; and, in the court thereof, was [sic] carried a firearm; or other said firearm being in the possession of the Defendant, Roland Anthony Sprint, contrary to Florida Statute . . . 8.12.13(2)(a)." [90CV02921 ECF 12, T. 478-79].

As to Count I, the court instructed that essential elements of the offense, which must be proved beyond a reasonable doubt, include: "(1) Defendant did take from

40

the person or immediate custody of Daniel Cortez, U.S. currency; (2) The property was taken against the will of Daniel Cortez; (3) The taking was by means of force, violence or assault or by putting Daniel Cortez in fear; and (4) The taking was with the intent to permanently deprive Daniel Cortez of the use of or benefit of the property taken." [*Id.,* T. 493]. In order to find Petitioner guilty of robbery, the jury was instructed that it must find that Petitioner, or his accomplice, during the commission of the crime, carried, displayed, used, or threatened to use or attempted to use, any weapon, or firearm. [*Id.,* T. 495]. The jury was further instructed that a person "may commit a crime by his own personal act or through the act or acts of another person." [*Id.,* T. 498]. If a person "aids, abets, counsels, hires or procures the commission of a crime," then he is "equally guilty as the one who performs the criminal act, whether he is or is not present at the commission of the offense." [*Id.*].

Where, as here, a defendant waits until after the state rests its case to challenge the propriety of an information, the defendant must show not only that the charging instrument is "technically defective," but that it is "so fundamentally defective that it cannot support a judgment of conviction." *Ford v. State,* 802 So. 2d 1121, 1130 (Fla. 2001). This Florida rule is "designed to discourage defendants from waiting until after a trial is over before contesting deficiencies in charging documents which could have easily been corrected if they had been pointed out before trial." *Id.*

41

If the information is merely imperfect or imprecise, the failure to challenge it by motion to dismiss waives defect. *See State v. Wimberly,* 459 So. 2d 456 (Fla. 5th DCA 1984). However, if the information totally omits an essential element of the crime or is so vague, indistinct or indefinite that a defendant is misled or exposed to double jeopardy, it is fundamentally defective. *Id.*

As applied, Petitioner was charged with the armed robbery with being in possession of a firearm or that his codefendant, Roland Sprint, was in possession of the firearm during the commission of the robbery. Nothing of record suggests that the information was technically or fundamentally defective. *See Sanders v. State,* 386 So. 2d 256, 257 (Fla. 5th DCA 1980). The information, as read by the court to the jury, charged Petitioner with the element of the offense and did not mislead the Petitioner. The specifications of the information alleged each essential element of the crime of armed robbery with a firearm. See Fla. Stat. § 812.13(2)(a) (1980). The information sufficiently notified Petitioner that he was charged with committing a robbery by carrying a firearm. *See Mosely v. State,* 688 So. 2d 999 (Fla. 2d DCA 1997). Petitioner has failed to demonstrate otherwise. *Sanders,* 386 So. 2d at 257.

The evidence adduced at trial, including Petitioner's own post-arrest statement, supported the jury verdict. Because Petitioner participated in the Farm Store robbery, during which Sprint pointed a firearm at Cortez, it was reasonable for

42

the jury to conclude that Petitioner aided and abetted Sprint, finding him guilty of the armed robbery committed by the codefendant. *See* Fla. Stat. § 777.011 (1993); Fla. Stat. § 813.13(2); *Jones v. State,* 648 So. 2d 1210, 1211 (Fla. 4th DCA 1995)(citing Fla. Stat. § 812.13(2); *Hicks v. State,* 583 So. 2d 1106 (Fla. 2nd DCA 1991); *Houghs v. State,* 448 So. 2d 628 (Fla. 5th DCA 1984).

In light of the foregoing, Petitioner has not demonstrated either deficient performance or prejudice arising from counsel's failure to challenge the Information as fatally defective. Petitioner has not shown that this claim is meritorious in accordance with *Martinez.* Therefore, this claim remains procedurally defaulted.

### B. Misadvice Re Plea

In **claim 2,** Petitioner asserts that his attorney was ineffective for misadvising him to reject the state's plea offer based on a "promise" that Petitioner would prevail at trial. [ECF 1, p. 6]. According to Petitioner, the state offered him a plea to a lesser-included-offense of second degree murder, in Case No. 80-9947, in exchange for dismissal of all robbery charges, including the armed robbery offense in Case No. 81-634CF. [*Id.*].

Respondent first argues this claim, even if proper before the court, is barred by laches. [ECF 11, pp. 15-16]. Prior to the enactment of the AEDPA, since there was no limitations period for filing habeas petitions, laches principles applied in

cases of extreme delay. *See Smith v. Jones,* 256 F.3d 1135, 1143 and n. 8 (11th Cir. 2001). Under Former Rule 9(a) of the Rules Governing Section 2254 Cases in the United States District Courts, dismissal based on the doctrine of laches was authorized, but required the state to make a particularized showing of prejudice due to extreme delay. *See Davis v. Dugger,* 829 F.2d 1513, 1518-19 (11th Cir. 1987)(citations omitted)(applying former Rule 9(a) of the Rules Governing Section 2254 in the United States District Courts); *Smith v. Jones,* 256 F.3d at 1143 and n. 8.

As applied, the Petitioner filed this latest petition after the AEDPA's enactment, and after Rule 9(a) was amended to reflect the changes resulting from the AEDPA's enactment. Thus, Rule 9(a) was "deleted as unnecessary in light of the applicable one-year statute of limitations for § 2254 petitions, added as part of the [AEDPA], 28 U.S.C. § 2244(d)." *See* § 2254 Rule 9, Advisory Committee Notes, 2004 Amendments.[6] It is true that Petitioner never raised this claim in the state forum, nor did he do so here until after his original judgment was amended in 2017. Respondent, however, has not demonstrated what efforts, if any, it made to obtain the records of Petitioner's state court proceedings. In light of the amendment to Rule 9, it is certainly far from clear whether laches even applies. Even if it did, this court was, in fact, able to obtain the records which were filed by Respondent with

---

[6]Rule 9 was changed to reflect that a petitioner must obtain approval from the court of appeals before filing a second or successive motion. *Id.*

this court in Petitioner's first habeas proceeding. Therefore, dismissal on the doctrine of laches should be denied.

Next, Respondent argues that Petitioner is not entitled to relief because a plea mentioned by Petitioner was extended in Case No. 80-9947 and not 81-634. [ECF 11, p. 15]. Petitioner does not dispute that a plea offer was only extended in relation to the 1980 case. [ECF 11, p. 15, ECF 1, pp. 5-6]. Petitioner admits he rejected the state's plea offer in Case No. 80-9947 based on counsel's advice. [ECF 1, p. 6]. As applied to this case, the claim remains procedurally defaulted because Petitioner has not demonstrated deficiency or prejudice under *Strickland*.

1. Applicable Legal Standard

The law is well settled that defense counsel has an affirmative duty, under the Sixth Amendment, to provide competent advice, and to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to an accused. *See Missouri v. Frye,* 566 U.S. 134, 140-141 (2012); *Lafler v. Cooper,* 566 U.S. 156, 162-63 (2012)(citations omitted). The *Strickland* framework applies to advice regarding whether to plead guilty or proceed to trial. *See Lafler v. Cooper,* 566 U.S. at 162-63 (quoting *Hill v. Lockhart,* 474 U.S. 52, 57-59 (1985)).

While the analysis of *Strickland*'s performance prong is the same, in *Lafler*, the Supreme Court explained that, to prove *Strickland* prejudice with respect to a

plea, a petitioner is required to demonstrate that the outcome of the plea process would have been different with competent advice. *Lafler v. Cooper,* 566 U.S. at 162-63; *Missouri v. Frye,* 566 U.S. at 146. The *Lafler* Court ruled that a habeas petitioner "must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Id*. at 163. *See also, Freeman v. United States,* No. 16-17185-J, 2018 WL 6318358, at *10 (11th Cir. Jul. 31, 2018), cert. denied, 139 S. Ct. 1352 (2019).

2. Analysis

First, it bear mentioning that there is nothing of record to suggest that a plea offer was extended in this case. Petitioner carries the burden of proof of demonstrating that there was a plea offer extended in the 1981 case, and that he rejected the offer based on counsel's misadvice. Other than Petitioner's self-serving allegations, he also has provided no objective evidence that the terms of the plea extended in the homicide offense included a plea that would dismiss the charge in this case. Further, Petitioner concedes he agreed to counsel's trial strategy in that

case. Now, decades later, he suggests for the first time that this advice was deficient, and but for the deficiency, he would have accepted a plea, which would have resulted in dismissal of the charge in the 1981 case. This claim does not rise above the speculative level, especially since no plea offer was formally extended on this case. *See Freeman v. United States,* 2018 WL 6318358, at *11 (citing *Tejeda v. Dugger,* 941 F.2d 1551, 1558-59 (11th Cir. 1991)).

Respondent argues there was no plea offer in this case. [ECF 11, 15]. Given the record before this court, Petitioner has not demonstrated deficiency, much less prejudice under *Strickland* arising from any purported misadvice. Petitioner's "after-the-fact personal contentions that he would have pleaded guilty had his counsel represented him adequately," is unsupported by the record. Petitioner has not met his burden of proof, having failed to demonstrate that counsel's purported deficiencies resulted in prejudice under *Strickland.* Therefore, this claim remains procedurally defaulted.

### C. General Verdict

In **claim 3,** Petitioner asserts that his attorney was ineffective for failing to argue and preserve for appellate review a claim that the jury's general verdict was unlawful. [ECF 1, pp. 7-8]. Petitioner again only challenges the jury's general verdict in Case No. 80-9947 and makes no mention whatsoever why he opines that

the verdict as to Case No. 81-634 was unlawful. *See* [ECF 1, 12]. Petitioner has not met his burden of proof. His claim is bereft of any factual support whatsoever. Therefore, it is subject to summary dismissal. *See* Rule 2(c)(2) of the Rules Governing Section 2254 Cases in the United States District Courts (requiring a § 2254 petition state the facts supporting each ground for relief). It also remains procedurally defaulted because Petitioner has not shown that the claim is substantially meritorious under *Martinez.*

In any event, even if the jury returned a general verdict as to Case No. 81-634, relating to the armed robbery of the Farm Store, as discussed in relation to claim 1 above, the Information specified the essential elements of the offense. The court properly instructed the jury on those elements. The jury verdict was supported by the evidence. Thus, Petitioner has not shown deficiency or prejudice under *Strickland* arising from counsel's failure to preserve this issue for appeal. Consequently, this claim remains procedurally defaulted from review in this latest habeas proceeding.

### D. Consolidation of Cases

In **claim 4,** Petitioner asserts that his attorney was ineffective for moving to consolidate the robbery offense charged in **Case No. 81-634CF** with the murder and armed robbery offenses charged in **Case No. 80-9947.** [ECF 1, p. 9]. Petitioner

argues that these cases were "illegally and prejudicially consolidated." [*Id.*]. He maintains counsel should have never sought consolidation because the armed robbery offense charged in Case No. 81-634 "happened in another town, with a different victim, hours after the murder and robbery," as charged in Case No. 80-9947. [*Id.*].

Respondent argues that relief is not warranted on this claim because counsel's decision was strategic in nature and should not be second-guessed. [ECF 11, pp. 17-18].

As discussed below, this claim remains procedurally defaulted under *Martinez* because Petitioner has not shown the claim is substantially meritorious.

Prior to trial, counsel moved to consolidate both cases on the basis that the facts surrounding the illegal acts charged in Case No. 80-9947 were "intimately intertwined" with those charged in Case No. 81-634. [90CV02921 ECF 12, p. 172]. Counsel explained that the state had previously filed a notice in the 1980 case indicating its intent to offer evidence of other crimes or acts, pursuant to Fla. Stat. § 90.404(2)(b)(1), at the trial in Case No. 80-9947. [*Id.*]. Because both cases were triable in the same court, and were based "on two or more connected acts or transactions," counsel sought consolidation fearing Petitioner would "suffer great prejudice" if the two cases were tried separately. [*Id.*].

49

Under Florida law, similar fact evidence of other crimes, wrongs or acts is admissible at trial where relevant to prove a material fact at issue, including common scheme or plan, intent, and identity. *See* Fla. Stat. § 90.404(2)(a), (b); *Williams v. State,* 110 So. 2d 654 (Fla. 1959). The *Williams* Rule provides that evidence of similar acts which point to the commission of a separate crime is admissible if found to be relevant for any purpose except showing bad character or propensity. *See Williams v. State,* 143 So. 2d 484, 486 (Fla. 1962); *Robertson v. State,* 829 So. 2d 901, 907-08 (Fla. 2002). *See also Lamontagne v. Sec'y, Dep't of Corr.,* 433 F. App'x 746, 749 (11th Cir. 2011)(citing Fla. Stat. § 90.404(2)(a)). Federal courts have also long recognized the important evidentiary principle that evidence of other crimes, wrongs, or acts is not admissible to prove bad character in order to show that the accused acted in conformity. *See Britton v. Rogers,* 631 F.2d 572 (8th Cir. 1980). The Eleventh Circuit, however, has held that "other crimes" evidence is admissible when offered for different purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, or identity. *See Hall v. Wainwright,* 733 F.2d 766 (11th Cir. 1984).

As applied, counsel was not ineffective for seeking consolidation. As previously discussed, and as conceded by Petitioner, there are facts common to both cases. Petitioner was charged in the 1980 case with the homicide and armed robbery

50

during which he and his co-defendant stole a Pontiac Bonneville. Petitioner then drove the stolen vehicle to a convenience store, where they committed an armed robbery with the same firearm used to kill the owner of the Pontiac. Prior to the homicide, by Petitioner's own admission, his co-defendant insisted that he accompany him to rob a convenience store. Given the foregoing, including the temporal relationship of the offenses, Petitioner has not demonstrated that counsel was ineffective for seeking consolidation of the two cases. Consequently, this claim remains procedurally defaulted under *Martinez,* since no showing has been made that the claim is substantially meritorious.

## X. Cautionary Instruction Re *Clisby* Rule

The Court is mindful of the *Clisby*[7] rule that requires district courts to address and resolve all claims raised in habeas corpus proceedings, regardless of whether relief is granted or denied. *Clisby v. Jones*, 960 F.2d at 936-36; *Rhode v. United States,* 583 F.3d 1289, 1291 (11th Cir. 2009)(holding that *Clisby* applies to § 2255 proceedings). However, nothing in *Clisby* requires consideration of claims or arguments raised for the first time in objections. If the petitioner attempts to raise arguments or further factual support for his claims in objections, the court should exercise its broad discretion and refuse to consider Petitioner's arguments not raised

---

[7]*Clisby v. Jones*, 960 F.2d 925, 936 (11th Cir. 1992).

before the magistrate judge in the first instance. *See Williams v. McNeil,* 557 F.3d 1287, 1290-91 (11th Cir. 2009)(*citing Stephens v. Tolbert,* 471 F.3d 1173, 1175 (11th Cir. 2006)(finding no abuse of discretion by the district court in declining to consider timeliness argument that was not presented to the magistrate judge)). This is so because "[P]arties must take before the magistrate, 'not only their best shot but all of the shots.'" *See Borden v. Sec'y of Health & Human Services*, 836 F.2d 4, 6 (1st Cir. 1987) (*quoting Singh v. Superintending School Committee of City of Portland*, 593 F. Supp. 1315, 1318 (D. Me. Sept. 27, 1984).

Finally, this court has considered all of Petitioner's claims for relief. *See Dupree v. Warden,* 715 F.3d 1295 (11th  Cir. 2013). To the extent they were not considered in the state forum, as discussed in this report, under *de novo* review, none of the claims individually, nor the claims cumulatively warrant relief. Whether a precise argument, subsumed within any of the foregoing grounds for relief, was not specifically addressed herein or in the state forum, all arguments and claims were considered and found to be devoid of merit, even if not discussed in detail here.

## XI. Evidentiary Hearing

To the extent Petitioner claims he should be granted an evidentiary hearing on these claims, his argument fails because he has not met the statutory threshold for granting a hearing. In a habeas corpus proceeding, the burden is on Petitioner to

establish the need for a federal evidentiary hearing. *See Chavez v. Sec'y, Fla. Dep't of Corr.,* 647 F.3d 1057, 1060 (11th Cir. 2011). In reviewing a state habeas corpus petition in which Petitioner failed to develop the factual basis for a claim in the state court proceedings, the district court "shall not hold an evidentiary hearing on the claim unless the applicant shows that --(A) the claim relies on--. . .(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offenses." *See* 28 U.S.C. § 2254(e)(2). "[A] failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Williams v. Taylor,* 529 U.S. at 432. The Supreme Court has also made clear that, § 2254(e)(2) "continues to have force" and restricts federal courts from considering new evidence where a claim was not adjudicated on the merits. *Cullen v. Pinholster,* 563 U.S. 170, 185 (2011)(citing *Williams v. Taylor,* 529 U.S. 362, 427-29 (2000)). Petitioner is not entitled to an evidentiary hearing. *See Clark v. Atty Gen'l, Fla.,* 821 F.3d 1270, 1291 (11th Cir. 2016).

## XII. Certificate of Appealability

A prisoner seeking to appeal a district courts final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1); *see also Harbison v. Bell,* 556 U.S. 180, 183 (2009) *(*citing *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000)); *Wilkinson v. Dotson*, 544 U.S. 74, 78-83 (2005).

This Court should issue a certificate of appealability only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a district court has rejected a petitioner's constitutional claims on the merits, petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack*, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, a petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*.

No certificate of appealability should issue. If Petitioner does not agree, he may bring this argument to the attention of the district judge in objections.

## XIII. Recommendation

Based upon the foregoing, it is recommended that:

1.      the federal habeas petition be DENIED;

2.      final judgment be entered in favor of Respondent;

3.      a certificate of appealability be DENIED; and,

4.      the case CLOSED.

Objections to this report may be filed with the district judge within fourteen days of receipt of a copy of the report. Failure to file timely objections shall bar a petitioner from a *de novo* determination by the district judge of an issue covered in this report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the district judge, except upon grounds of plain error or manifest injustice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Williams v. McNeil,* 557 F.3d 1287, 1291 (11th Cir. 2009)(finding district court has discretion to decline consideration of arguments not presented to the magistrate judge in the first instance).

SIGNED this 2nd day of December, 2019.

_____
UNITED STATES MAGISTRATE JUDGE

cc:    William Joseph Newkirk, *Pro Se*
       DC#77675
       Avon Park Correctional Institution
       Inmate Mail/Parcels
       8100 Highway 64 East
       Avon Park, FL 33825

       Richard Chambers Valuntas, Ass't Atty Gen'l
       Florida Attorney General's Office
       1515 N. Flagler Dr. #900
       West Palm Beach, FL 33401
       Email: CrimAppWPB@MyFloridaLegal.com